IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Case No. 06-cr-00373-WYD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

SAMMY EDWARD FRENCH,

    Defendant.
_____

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**
_____

I.    <u>INTRODUCTION</u>

THIS MATTER was before the Court in connection with a hearing on November 2, 2007, on Defendant's Motion to Suppress Identification by Rose Campain, Victim of FRE 404(b) Incident Alleged to Have Been Committed by the Defendant (filed September 24, 2007). At the hearing, evidence was admitted and testimony was taken. On December 17, 2007, Defendant submitted surveillance photographs. Proposed Findings of Fact and Conclusions of Law were filed on December 17 and 18, 2007.

After consideration of the testimony and the parties' arguments, Defendant's motion to suppress Identification by Rose Campain is denied as set forth below.

II    <u>BACKGROUND</u>

Concerning the charges against Defendant Sammy Edward French, the Court has heard testimony that between January 9, 2006 and July 3, 2006 seven banks were robbed in Colorado Springs and the Denver Metropolitan area in the District of

Colorado. Testimony and evidence has shown that during the ensuing investigation law enforcement officers used a photographic lineup.

Defendant previously filed a Motion to Suppress Identification related to the photographic lineup presented to certain bank tellers and other alleged witnesses to the bank robberies at issue in this case. After a number of hearings on that motion, I issued Findings of Fact and Conclusions of Law on July 25, 2007. While I found therein that the photographic lineup was unnecessarily suggestive, I also found that the identifications of Defendant were reliable under the totality of the circumstances. Accordingly, I denied Defendant's Motion to Suppress Identification.

Defendant now moves for an order suppressing the identification testimony of Rose Campain, the victim of a car jacking crime the Government alleges was committed by the Defendant. A hearing was previously held on whether this crime would be admitted under Rule 404(b). Thereafter, I issued an Order finding that the Government had stated a purpose for which evidence about this incident could be admissible under Rule 404(b). (Order of October 3, 2007, at 5.) Accordingly, I rejected Defendant's argument that evidence of this robbery should be excluded, but deferred a ruling until trial as to whether the probative value of this evidence substantially outweighs the danger of unfair prejudice and confusion of the issues under FED. R. EVID. 403. *Id.*

The current motion to suppress focuses upon the constitutionality of the photographic lineup presented to Ms. Campain and the procedures used by law enforcement in the presentation of that lineup. Rose Campain is alleged to be the

victim of a car jacking by Defendant which occurred on July 21, 2006, a date unrelated to any of the robberies Defendant is charged with.  During the investigation of that case, law enforcement officers used the same photographic lineup which was the subject of the original motion to suppress and which I have already found to be unnecessarily (and thus unconstitutionally) suggestive.  The victim of the car jacking, Rose Campain, picked the Defendant's picture out of the lineup.

Defendant argues that his identification by Rose Campain was the result of impermissibly suggestive photo lineup procedures.  He further argues that the totality of the circumstances surrounding the eyewitness identification procedures used in the presentation of the photo lineup violated his due process rights and requires that the testimony of the eyewitness Ms. Campain be excluded.

III. FINDINGS OF FACT

A. Rose Campain's Testimony

Ms. Campain testified that on July 21, 2006, she shopped at the King Soopers grocery store at 80th Street and Sheridan in Arvada, Colorado.  (November 2, 2007 Hearing Transcript ["Tr."]. at 3:3-9.)  She left the store at about 2:00 p.m.  (*Id.*)  When she was leaving the store to cross into the parking lot, she observed a man (later identified to be the Defendant) on her left, at the other door.  (*Id.* at 2:24-3:2.)  She estimated that the length of distance between her and the Defendant was 100 yards.  (*Id.* at 5:19-20.)  She was in such a hurry that she didn't think a whole lot about it but thought that the man was a pretty big guy and looked homeless.  (*Id.* at 3:3-4.)  She

noticed that his hair was in a pony tail (*id*. at 21:10) and she testified, "I'll even go as far to say I almost think we had eye contact." (*Id*. at 21:20-21.)

Ms. Campain continued walking to her car in the parking lot, but testified that "subconsciously I knew he walked in back of me." (Tr. at 4:5-8.) She did not look back at the man. (*Id.* at 23:4-5.) She placed her groceries in the trunk of her car and returned the shopping car to the cart return area which was right next to her car. (*Id*. at 4:5-8.) When she turned, the man she had seen earlier (Defendant) was approaching her. (*Id.* at 4:8.) She walked towards her car and was about to tell the man that she didn't have any change to give him when she noticed that the man was carrying a gun. (*Id*. at 4:10, 7:7-10.) She testified that by then the man was at her car. (*Id*. at 7:10-12.)

When the man got to her car, Ms. Campain testified that he came up very close to her, probably 18 inches away. (Tr. at 4:11:12). The man asked her for her car keys. (*Id.* at 4:16-17.) She testified that they were within "touching" distance when he displayed the gun, and asked for her keys. (*Id.* at 7:9-17.) She handed him the keys, and he told her to walk away calmly and not to say anything. (*Id*. at 4:20-21.) She testified that the entire encounter with the man at her car lasted for about 15-20 seconds. (*Id*. at 4:14:15.)

As to Ms. Campain's observations of the man during the encounter, she testified that from the moment she saw the gun she was focused on the gun and was not looking at the man's face for fear that he might find a reason to harm her. (*Id.* at 24:23-25, 25:1.) She kept looking at the gun thinking that this was "real." (*Id*. at 4:16-17.) While she testified that she does not know guns very well (*id*. at 25:4), she focused on the

gun closely enough to tell that it was more of a "James Bond" gun than a cowboy gun. (*Id.* at 25:10-14.) She observed that the center of the gun did not have a round cylinder, and the gun was sleek and longer and looked worn. (*Id.* at 25: 15-25, 26:1-24.) She focused her eyes down. (*Id.* at 27:19-22.)

As Ms. Campain left the area of the car, she had to actually step to the side to get around the man. (Tr. at 4:21:22). She walked back to the store. (*Id.* at 4:23.) As she got close to the store, he got Ms. Campain's car started and was driving towards her in her car. (*Id.* at 9:3:6.) While she was very "freaked out" as she thought he might shoot her, she glanced at the man the way you "glance at a stranger, you really don't look at their face. You look at all of them." (*Id.* at 9:12-14.) She testified that in a way she did see his face, but that she would not be able to describe his features to a sketch artist. (*Id.* at 12:17.) She also testified that the way she remembers things in her head is that she sees "people as a whole person." (*Id.* at 37:11-12.) Unless they are so ugly or beautiful she doesn't remember distinct features about them. (*Id.* at 37:12-14.)

While Ms. Campain was focused on the gun during the robbery, she also testified that there were no obstructions to her view of the Defendant. (*Id.* at 7:13-22.) Further, when asked as to whether she was so focused on the gun that she had no opportunity to observe Defendant and his face, she disagreed. (*Id.* at 46:7-11.) Ms. Campain testified that she did have a sense of what the man looked like as she noticed him when she was coming out of the store, when he was not a threat to her. (*Id.* at 46:7-20.) She "had a lot of opportunity to see him from a distance". (*Id.* at

39:13-14.) She particularly remembered his jowls and his eyebrows. (*id.* at 38:24-39:12.)

Ms. Campain called the police from the King Soopers store. (Tr. at 9:23-10:16.) She was very upset, asking the service counter to call 911 for her even though she had already called 911 from her cell phone. (*Id.* at 10:1-8.) When the police arrived, she described the suspect as six feet to six feet two inches; in dark clothes; wearing a hat; and appearing scruffy. (*Id.* at 10:17-11:21.) While she testified that the man was not African-American, she testified that he was so dirty and disheveled that she couldn't tell if he was white or light Hispanic. (*Id.* at 11:1-5.) She couldn't recall if the man was wearing glasses (*id.* at 11:16-18) or if he had facial hair. (*Id.* at 32:14-17.)

A store security officer showed her surveillance footage of the man maybe forty five minutes after she was car jacked, and she recognized the man in that footage. (*Id.* at 9:19-22, 11:22:12:15.) However, I note that in looking at copies of the surveillance photographs submitted in a separate pleading by Defendant (as received from Detective William Johnson of the Arvada police department), there are no identifiable facial features available in those photographs. I am not sure if those surveillance photographs, which are in black and white as compared to color, are the same as those looked at by Ms. Campain on the television monitor. However, Ms. Campain did acknowledge in her testimony that the surveillance photo on the monitor was also in black and white. (*Id.* at 37:20-25.)

Ms. Campain confirmed that she identified the man (now identified as the Defendant) in a photo lineup presented by Detective Johnson on July 28, 2006. (Tr. at

14:11-19:8.) She recalled being provided with an admonition by Detective Johnson (she did not recall seeing the admonition but remembered information from such an advisement and recognized her signature). (*Id*. at 14:14-25.) She did not feel pressure to pick any one in the lineup. (*Id.* at 15:24-25.) Detective Johnson did not tell Ms. Campain that any of the individuals depicted was of interest to the police. (*Id.* at 19:21.) Detective Johnson told Ms. Campain to look very carefully at the individuals in the lineup. She felt that she needed to be pretty sure to pick someone out and sign the form. (*Id.* at 15:11:18.)

When viewing the lineup for Detective Johnson, Ms. Campain "skipped right over" pictures 1 and 2. (Tr. at 16:8-9.) They were "simply not in any of my memory in my head." They were nothing like the guy. (*Id.* at 35:18-20.) She stared at picture No. 3 for "quite some time", almost signed her name right there and then but wanted to give the person the benefit of the doubt. (*Id.* at 16:9:12). She went to Picture 4 and thought he looked a little too "jovial". (*Id.* at 16:12-13.) Pictures 5 and 6 "were clearly not him." (*Id*. at 16: 13-14.) She then went back to Picture No 3, signed her name and dated it. (*Id*. at 16:15-16.) She dated the form July 8, 2006, but testified that this lineup actually occurred a week after the car jacking. (*Id*. at 16:17:23.)

Ms. Campain felt sure about her eventual selection of the Defendant. (Tr. at 17:23-24.) Detective Johnson gave her no feedback on her choice. (*Id*. at 18:15-19.) Ms. Campain also identified the Defendant in Court. (*Id*. at 18:23-6.) Ms. Campain agreed, however, that the photograph of Defendant in position number three of the photographic lineup does not include any of the lower half of Defendant's body or his

-7-

waistline area (*id.* at 37:22-24), the area she focused on during the robbery. Further, the man she saw outside the King Soopers had a pony tail but there is no pony tail to be seen in the photograph of Defendant. (*Id.* at 38:5-6.)

      B.      <u>Detective Johnson's Testimony</u>

Detective Johnson testified that he was asked to investigate the car jacking Ms. Campain was involved in after Officer Lewis of the Arvada Police Department interviewed Ms. Campain. (Tr. at 48:8-20.) Detective Johnson viewed a surveillance video tape from King Soopers and prepared a flyer to distribute to law enforcement that contained a picture of the suspect. (*Id.* at 48:21-49:15.) After the flyer was distributed, Detective Johnson was contacted by Detective Anderson of the Colorado Springs Police Department ["CSPD"]. (*Id.*) Detective Anderson had apparently recognized the Defendant from Detective Anderson's flyer, and Detective Anderson provided Detective Johnson with a photo lineup and other information regarding the Defendant's activities in the Colorado Springs area. (*Id.*)

On July 28, 2007, Detective Johnson presented the photo lineup to Ms. Campain after asking her to meet him at the Arvada Police Department. (Tr. at 49:16-50:25.) Detective Johnson is an experienced officer, trained to perform photo lineups. (*Id.* at 51:2-7.) His practice is to read to the witness an admonition contained on an admonition form before presenting the photo lineup, which explains, *inter alia*, that the photograph may or may not include the suspect, and that the witness should not believe or guess whether the guilty person has been caught. (*Id.* at 51:8-20;

Government Exhibit One.) He also asks the witness to sign by the picture chosen and date it. (*Id.*)

Detective Johnson was confident that he read the admonition to Ms. Campain, that she also read it to herself, and that she had no questions. (Tr. at 52:4-13; Government Exhibit One.) Detective Johnson had no concerns about the fairness of the lineup, and his impression was that Ms. Campain understood the admonition provided and appeared in no hurry to make a selection. (*Id.* at 52:21-53:9.) He did not show her any photographs or video surveillance before she made a selection. (*Id.* at 54:13-22.)

Detective Johnson held the lineup face down after the admonition; told Ms. Campain to relax for a moment; and also told her that she could turn it over when she was ready. (Tr. at 53:11-21.) Ms. Campain then took a couple of deep breaths, turned over the line-up; appeared to study the photographs and then signed her name by the Defendant's photograph in the number three position. (*Id.* at 53:11-21.) Detective Johnson also signed the admonition form. (*Id.* at 51:21-52:3; Government Exhibit One.) Detective Johnson testified that he made no suggestions, provided no hints, and did nothing to influence Ms. Campain's selection. (*Id.* at 54:2-13.) Only after she selected the Defendant, did she ask Detective Johnson who the suspect was. (*Id.* at 55:13.)

IV. CONCLUSIONS OF LAW

In deciding Defendant's motion to suppress, I follow the two-step test articulated in *United States v. Sanchez,* 24 F.3d 1259, 1261 (10th Cir. 1994). First, I must decide

whether the photo array was unnecessarily suggestive. *Id.* at 1261-1262. If I determine that the procedure was unnecessarily suggestive, I then must decide whether the identification was reliable under the totality of circumstances. *Id.*; *see also Neil v. Biggers*, 409 U.S. 188, 199 (1972). "These two prongs must be analyzed separately, and it is only necessary to reach the second prong if the court first determines that the array was impermissibly suggestive." *Sanchez*, 24 F.3d at 1262.

In the case at hand, the photo lineup was the same lineup that I previously found to be unnecessarily suggestive. The parties did not relitigate this finding at the hearing. Accordingly, I find that the lineup shown to Ms. Campain was unnecessarily suggestive, incorporating by reference my findings in my Order of July 25, 2007.

I now turn to the issue of whether the identification of Defendant by Ms. Campain was reliable under the totality of the circumstances. The question presented is, considering the totality of the circumstances, were the lineup procedures so unnecessarily suggestive and conducive to irreparable mistaken identification as to be a denial of due process. *See Manson v. Braithwaite*, 432 U.S. 98 (1977); *Martinez v. Turner*, 461 F.2d 261, 263 (10th Cir. 1972).

The Supreme Court has identified five factors a court should consider in evaluating whether an identification was reliable: 1) the opportunity of the witness to view the criminal at the time of the crime; 2) the witness' degree of attention; 3) the accuracy of the witness' prior description of the criminal; 4) the level of certainty demonstrated by the witness at the confrontation; and 5) the length of time between the

crime and the confrontation. *Biggers*, 409 U.S. at 199-200. I find, after consideration of the testimony and the relevant factors, that the identification was reliable.

First, the Defendant did not wear a mask or cover himself in any way during this car jacking. Ms. Campain had a clear view of his height, build, and general appearance before he threatened her with a gun. She also had an opportunity to observe him when she was not under stress, *i.e.*, when she observed him as she was coming out of the store. While Ms. Campain did not focus on Defendant's face or facial features during the actual car jacking, she had a good chance to observe him when she first saw him while leaving the store. She also had the opportunity, albeit brief, to observe Defendant as she was walking back toward the store after the car jacking.

I find that these factors are sufficient for a reliable identification despite Ms. Campain's belief that she did not study the details of the Defendant's features but rather identified him as a whole. *See, e.g., United States v. Bredy*, 209 F.3d 1193, 1196-97 (10th Cir. 2000) (although robber wore mask and witnesses could not see his face, their identification of the robber was sufficiently reliable given the fact that they were able to describe other details of the robber's appearance and attire), *cert. denied*, 531 U.S. 897 (2000); *United States v. Rundell*, 858 F.2d 425, 427 (8th Cir. 1988) (brief view of robber wearing cap and sunglasses and the witnesses' fear and shock which may have detracted from their attentiveness did not prevent witness from having sufficient impression to make reliable identification); *United States v. Jarrad*, 754 F.2d 1451, 1455 (9th Cir. 1985) (3-4 second view of robber at 45 feet sufficient to permit clear view of face and build). Although Ms. Campain did not provide a detailed

-11-

description of the car jacker's facial features, she observed him enough to be able to identify him in the surveillance tape, soon after the encounter. She was able to attest to his build and appearance.

Most importantly, Ms. Campain did not waiver in responding to the Court's question as to the certainty of her identification of the Defendant. (*See, e.g.,* Tr. at 64:15-20.)  She was also able to identify him, a week later, with no pressure from Detective Johnson from the photo lineup after ruling out the other suspects to give him the benefit of the doubt.

The admonition provided by Detective Johnson was also appropriate and was not tantamount to the officer improperly interfering with the selection process.  Lastly, the short interval of time between the crime and the identification—one week—further adds to the reliability of the identification.  *Cf. United States v. Shoels*, 685 F.2d 379, 385 (10th Cir. 1982) (two month interval was not a substantial amount of time which would impede identification); *United States v. Jacobowitz*, 877 F.2d 162, 168 (2d Cir. 1989) (ten month interval between crime and confrontation not enough, in light of other factors, to preclude in-court identification); *Lavernia v. Lynaugh*, 845 F.2d 493, 500 (5th Cir. 1988) (identification over a year after crime was sufficiently reliable given the totality of the circumstances); *United States v. Causey*, 834 F.2d 1277, 1286 (6th Cir. 1987) (three to four months); *United States v. Wilson*, 787 F.2d 375, 386 (8th Cir. 1986) (four months).

Based on the foregoing, I find that the totality of the circumstances indicates that Ms. Campain's identification of the Defendant was reliable.  I also find that the

identification procedures applicable to Ms. Campaign did not create a "very substantial likelihood of . . . misidentification." *Biggers*, 409 U.S. at 198. Accordingly, I find that the admission of such identification evidence will not deprive the Defendant of his due process rights.

V. <u>CONCLUSION</u>

In conclusion, it is

ORDERED that Defendant's Motion to Suppress Identification (docket # 56) is **DENIED**. It is

FURTHER ORDERED that a status conference is set for **Wednesday, January 30, 2008, at 1:30 p.m.** to discuss the status of the case and the setting of trial. The parties shall meet and confer and be prepared to discuss at the conference how much time remains on the speedy trial clock.

Dated: January 24, 2008

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge